# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                           :
WILLIAM JARRAD LITTLETON,                  :
                                           :
                        Plaintiff,         :
                                           :
            v.                             :        20 Civ. 949 (CM) (SN)
                                           :
GOLDMAN SACHS GROUP, INC., RACHEL          :
SCHNOLL, in her individual and professional:
capacities, and SIRION SKULPONE, in her    :
individual and professional capacities,    :
                                           :
                        Defendants.        :
------------------------------------------------------------x
```

## ANSWER OF DEFENDANT THE GOLDMAN SACHS GROUP, INC.

Defendant The Goldman Sachs Group, Inc. ("GS Group" which, together with its subsidiaries and affiliates, is referred to herein as "Goldman Sachs" or the "firm"), by its undersigned attorneys, for its answer to the Complaint (the "Complaint") of plaintiff William Jarrad Littleton ("Littleton" or "Plaintiff"), herein states, upon knowledge as to itself and its conduct and upon information as to all other matters, the following:[1]

## PRELIMINARY STATEMENT

1A.   Plaintiff included in his Complaint a Preliminary Statement, and Goldman Sachs will respond in kind before answering each of the specific allegations in Plaintiff's meritless Complaint.

2A.   Plaintiff occupied a relatively junior position within Goldman Sachs'

---

[1]   The Goldman Sachs Group, Inc. is the publicly-held parent company of the Goldman Sachs organization; it is not a registered broker-dealer, does not provide investment banking services and was not Plaintiff's employer.  This Answer is provided without prejudice to the right of The Goldman Sachs Group, Inc. to obtain dismissal of all claims asserted against it on the ground that The Goldman Sachs Group, Inc. is not a proper party.

Consumer and Investment Management Division.  Although he could perform well when he focused on his work, in recent years it became clear that Plaintiff was not sufficiently interested in his group's activities as he himself repeatedly expressed his preference to work in another area of the firm.  Plaintiff was counseled on the need to stay engaged, but unfortunately was either unwilling or unable to dedicate himself to the work of his team.  In addition to his lack of engagement, he was the subject of complaints by junior and senior employees, including for berating and demeaning a subordinate.  In May 2018, Plaintiff was informed by management that he should look elsewhere for another position.  Ultimately, he was given seven months while remaining in his position and continuing to be paid, to find something else and was assisted in doing so by senior firm personnel, who recommended Plaintiff to their colleagues, but was unsuccessful.

   3A. Plaintiff's Complaint is logically incoherent.  Plaintiff admits that from day one of his employment he was an open and active participant in Goldman Sachs' extensive support groups for LGBT+ employees and was open about his sexual orientation.  Plaintiff's emphasis on the firm's support of LGBT+ employees contradicts any notion of discrimination.  Plaintiff also stresses that his managers were complimentary of his performance and ability, and quotes their repeated positive comments when he did well.  Yet, according to the Complaint, at some point in 2018 the same managers who had been supportive of him for years knowing of his sexual orientation supposedly suddenly decided to discriminate against him.  The claim is false and nonsensical.

   4A. The story of Plaintiff's employment with Goldman Sachs, rather, is one of non-discriminatory consideration of him, support and acknowledgement for what he did right and frank discussions with him when he chose to disengage.

5A.     Plaintiff tries to bolster his illogical claim by highlighting a few alleged comments, only one of which he ever raised with the firm's Employee Relations department prior to being told that he should look elsewhere for employment.  That lone allegation, from five years ago, concerned an alleged comment that Plaintiff did not hear, supposedly made by an employee whom Plaintiff refused to identify.  The firm did what it could to investigate the allegation after Plaintiff mentioned it but was impeded by Plaintiff.  In declining to give further information, Plaintiff told the firm that what he had heard was hearsay, that he was satisfied with what had been done, and that he considered the business to be tolerant and inclusive.

6A.     The Complaint also stresses three other alleged comments, from 2015, 2016 and 2018, that Plaintiff did not raise with Employee Relations until *after* he was informed that he did not have a future in his group, and that thus could not possibly have been taken into account by the managers who made that decision.  Rather than ignoring his belated complaint, the firm investigated and found that the belatedly alleged comments were either unsubstantiated or on their face insubstantial.  These few, distorted allegations cannot distract from the fact that the decisions reached with regard to Plaintiff's employment were made for legitimate nondiscriminatory reasons.

7A.     Goldman Sachs is extraordinarily supportive of its LGBT+ employees and issues impacting the greater LGBT+ community.  Indeed, the firm's regard for its LGBT+ employees is well known, as Goldman Sachs is routinely ranked as one of the best firms to work for in the United States for LGBT+ equality.  For example, the Human Rights Campaign has awarded Goldman Sachs a 100% on its Corporate Equality Index fifteen years in a row and in 2017 listed Goldman Sachs as the Best Place to Work for LGBT Equality.  The firm has a robust LGBT Network, an affinity group that the firm spends substantial resources in supporting.

Plaintiff was one of many LGBT+ employees at the firm, and as Plaintiff's Complaint makes clear, he was active in the firm's LGBT Network from the earliest days of his employment. Rather than being held against him, Plaintiff was supported, promoted and given raises while the firm was aware of his sexual orientation and activities in the LGBT Network, undermining any claim of discrimination.

8A.    Although the firm strongly values and encourages its LGBT+ employees, all of its employees are expected to be actively and consistently engaged with their work responsibilities.  Plaintiff did not do so and after several months of being permitted to maintain his position while searching for other opportunities within the firm, his employment was no longer tenable.

## ANSWER TO SPECIFIC ALLEGATIONS OF THE COMPLAINT

1.    Denies the allegations of Paragraph 1 of the Complaint, except admits that plaintiff was employed by Goldman, Sachs & Co. and its successor Goldman Sachs & Co. LLC for approximately eight years and that at the time his employment was terminated his title was Vice President, functioning in a relatively junior role in the Consumer and Investment Management Division, and avers that there are numerous Goldman Sachs employees who identify as LGBT+ and who serve in roles and job titles senior to that occupied by Plaintiff at the time his employment was terminated.

2.    Denies the allegations of Paragraph 2 of the Complaint, and avers that Paragraph 2 purports to include a partial quotation from a magazine article and refers to that article for a complete statement of its contents.

3.    Denies the allegations of Paragraph 3 of the Complaint, and avers that Goldman Sachs is routinely ranked as one of the best firms to work for in America for LGBT+ equality (including by the Human Rights Campaign and Vault) and that, as quoted in Paragraph 3, "the

crux of [the firm's] efforts is a focus on cultivating and sustaining a diverse work environment and workforce, which is critical to meeting the unique needs of our diverse client base."

4.      Denies the allegations of Paragraph 4 of the Complaint, except admits that, on November 7, 2018, Goldman Sachs announced newly elected Participating Managing Directors, and avers that Paragraph 4 purports to recite selected portions of a Goldman Sachs release and refers to the release for a complete statement of its contents.

5.      Denies the allegations of Paragraph 5 of the Complaint.

6.      Denies the allegations of Paragraph 6 of the Complaint.

## ADMINISTRATIVE PREREQUISITES

7.      States that Paragraph 7 of the Complaint contains legal conclusions to which no response is required, except admits that, on June 5, 2019, Plaintiff filed a complaint in New York State Supreme Court against Defendants bringing claims under the New York State Human Rights Law and the New York City Human Rights Law.

8.      Admits the allegations of Paragraph 8 of the Complaint.

9.      Admits the allegations of Paragraph 9 of the Complaint.

10.      States that Paragraph 10 of the Complaint contains legal conclusions to which no response is required.  To the extent that a response is required, Goldman Sachs denies the allegations of Paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

11.      States that Paragraph 11 of the Complaint contains legal conclusions to which no response is required, and denies that he or any party deprived Plaintiff of his rights under Title VII.

12.      States that Paragraph 12 of the Complaint contains legal conclusions to which no response is required.

## PARTIES

13.      States that the last sentence of Paragraph 13 of the Complaint contains legal conclusions to which no response is required, denies the remaining allegations of Paragraph 13 of the Complaint, except admits that Plaintiff's last job title at the firm was Vice President and that at the time of the termination of his employment was assigned to a supporting role in Goldman Sachs' Specialty Solutions team within the Product Strategy Group, and lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that Plaintiff resides in New York.  To the extent that a response is required to the last sentence of Paragraph 13 of the Complaint, Goldman Sachs denies the allegations.

14.      States that the last sentence of Paragraph 14 of the Complaint contains legal conclusions to which no response is required, and denies the remaining allegations of Paragraph 14 of the Complaint, except admits that GS Group is a corporation duly organized under the laws of the State of Delaware and is registered as a foreign business corporation in the State of New York.  To the extent that a response is required to the last sentence of Paragraph 14 of the Complaint, Goldman Sachs denies the allegations.

15.      States that the last sentence of Paragraph 15 of the Complaint contains legal conclusions to which no response is required, and denies the remaining allegations of Paragraph 15 of the Complaint, except admits that Defendant Rachel Schnoll ("Schnoll") is a Managing Director of Goldman Sachs and was the Head of the U.S. Product Strategy Group during the time period relevant to the Complaint, and avers that Ms. Schnoll acted as an indirect manager of Plaintiff, among others.  To the extent that a response is required to the last sentence of Paragraph 15 of the Complaint, Goldman Sachs denies the allegations.

16.      States that the last sentence of Paragraph 16 of the Complaint contains legal conclusions to which no response is required, and denies the remaining allegations of Paragraph

16 of the Complaint, except admits that Defendant Sirion Skulpone ("Skulpone") was the Head

of the Specialty Solutions team within the U.S. Product Strategy Group during the time period

relevant to the Complaint, and avers that Ms. Skulpone had managerial responsibilities with

respect to Plaintiff, among others, and is now a member of Goldman Sachs' Asset Management

Quantitative Investment Strategies Group, in which one of her responsibilities is helping to sell

Goldman Sachs' Tax Advantaged Core Strategies.  To the extent that a response is required to

the last sentence of Paragraph 16 of the Complaint, Goldman Sachs denies the allegations.

## FACTUAL ALLEGATIONS

17.     Lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations of Paragraph 17 of the Complaint.

18.     Denies the allegations of Paragraph 18 of the Complaint, except admits that

Plaintiff was hired by Goldman Sachs in 2010 after graduating from Amherst College with a

Bachelor of Arts in Economics and started work as an Analyst in the Market Risk Management

& Analysis department, in which one of his responsibilities was to serve as the junior-most

member of a team and monitor the daily market risks of a distressed credit hedge fund managed

by Goldman Sachs under the supervision of more senior members of the team.

19.     Denies the allegations of Paragraph 19 of the Complaint, except admits that

Plaintiff was one of the junior members of the team who was asked, as a then-recent participant

in the department's new hire orientation efforts, to provide perspective on revisions to training

for the following class of new hires.

20.     Denies the allegations of Paragraph 20 of the Complaint, except admits that the

Consumer Investment Management Division is co-headed by Eric Lane and Tim O'Neill and

that the "Americas Client Business" is headed by Craig Russell.

21.     Denies the allegations of Paragraph 21 of the Complaint, except admits that Plaintiff was promoted to the position of Senior Analyst in 2013, Associate in 2014, and Vice President on January 1, 2016, at which time he was 27 years old, and avers that becoming a Vice President six years after employment is within the typical timeframe and that, as Plaintiff alleges elsewhere, during the times in which he was promoted he was active in the firm's LGBT Network.

22.     Denies the allegations of Paragraph 22 of the Complaint, except admits that Plaintiff was a member of the Specialty Solutions team, which was within the Product Strategy Group, and that the Specialty Solutions team has product management responsibility for cross-asset and alternative investment strategies.

23.     Denies the allegations of Paragraph 23 of the Complaint, except admits that, among other activities, Plaintiff and other members of his team acted as client-facing product specialists.

24.     Denies the allegations of Paragraph 24 of the Complaint, except admits that, in October 2016, Plaintiff became a FINRA Registered Option Principal, and avers that, in 2016, Plaintiff worked as a supporting member of a team that assisted with communications of options-related strategies for Goldman Sachs' Americas Client Business.

25.     Denies the allegations of Paragraph 25 of the Complaint, except admits that, during his employment with Goldman Sachs, Plaintiff attended client meetings, sales pitches, and asset defense engagements and assisted with training programs, acting as a supporting member of his team.

26.     Denies the allegations of Paragraph 26 of the Complaint, except admits that, in 2016, Goldman Sachs was awarded the Best ETF Issuer Capital Markets Desk Award from

ETF.com, and avers that the firm's ETF team, which did not include Littleton, was principally responsible for the award.

27.     Denies the allegations of Paragraph 27 of the Complaint, except admits that during the limited period of time that Ms. Skulpone, who was the product manager for the Tracker Fund, was on maternity leave Plaintiff did product management work on the Fund and that in late 2018 Mr. Littleton asked to work on some additional products and that Ms. Schnoll declined his request, and avers that at the time Mr. Littleton had been told that he would need to leave the group given his lack of engagement.

28.     Denies the allegations of Paragraph 28 of the Complaint, except admits that Goldman Sachs uses a performance review process which is referred to by some as a "360-degree" process, and avers that the review process includes employees providing comments on reviewees and managers providing their ratings.

29.     Denies the allegations of Paragraph 29 of the Complaint, except admits that, in connection with the annual performance review process, managers assign quartile rankings to employees, of which 1 is the highest quartile and 4 is the lowest quartile, and avers that during the last three years of his employment, Plaintiff's quartile rankings declined from 2 in 2015 to 3 in 2016, 4 (the lowest quartile, representing the lowest 25% of an employee's peer group) in 2017 and 4 in 2018.

30.     Denies the allegations of Paragraph 30 of the Complaint, avers that Paragraph 30 purports to include partial quotations from Plaintiff's performance review document, from which Plaintiff inaccurately quotes, refers to the review document for a complete statement of its contents, and further avers that Plaintiff's reliance on management's inclusion of positive

statements about his performance contradicts the Complaint's inaccurate assertion that they held his sexual orientation against him.

31.    Denies the allegations of Paragraph 31 of the Complaint, avers that Paragraph 31 purports to include partial quotations from Plaintiff's performance review document, from which Plaintiff inaccurately quotes, refers to the review document for a complete statement of its contents, and further avers that Plaintiff's reliance on management's inclusion of positive statements about his performance, in particular about his mentoring and diversity efforts, contradicts the Complaint's inaccurate assertion that they held his sexual orientation against him.

32.    Denies the allegations of Paragraph 32 of the Complaint, avers that Paragraph 32 purports to include partial quotations from Plaintiff's performance review document, refers to the review document for a complete statement of its contents, and further avers that in 2016 Plaintiff's quartile ranking was reduced from 2 to 3 due to declining performance and that Plaintiff's repeated reliance on management's inclusion of positive statements about his performance contradicts the Complaint's inaccurate assertion that they held his sexual orientation against him.

33.    Denies the allegations of Paragraph 33 of the Complaint, avers that Paragraph 33 purports to include partial quotations from Plaintiff's performance review document, refers to the review document for a complete statement of its contents, and further avers that in 2017 Plaintiff's Overall Manager Rating declined from the year before and his managers reduced his quartile ranking from 3 to 4, placing him in the bottom 25% of his peer group, that the 2017 review document notes that Plaintiff had informed his managers that he would like to work in another group and that he had become increasingly disengaged from his work in his department, and that Plaintiff's reliance on management's inclusion of positive statements about his

performance, in particular about his mentoring and diversity efforts, contradicts the Complaint's inaccurate assertion that they held his sexual orientation against him.

34.      Denies the allegations of Paragraph 34 of the Complaint, and avers that Plaintiff's assertions that he received positive reviews and promotions by Goldman Sachs personnel with full knowledge of his sexual orientation contradict the Complaint's false claim of discrimination.

35.      Denies the allegations of Paragraph 35 of the Complaint, except admits that the performance review forms used by Goldman Sachs contain evaluations of diversity and inclusion performance and refer to the performance review documents for Plaintiff for a complete statement of their contents, and avers that Plaintiff was a member of LGBT+ organizations that were established and supported by Goldman Sachs in its ongoing industry-leading efforts of diversity and inclusion, and further avers that the facts that Goldman Sachs actively supports LGBT+ networks and activities and that Goldman Sachs formally evaluates employees on their contributions to diversity and inclusion efforts further contradict the complaint's false claim of discrimination.

36.      Denies the allegations of Paragraph 36 of the Complaint, except admits that Plaintiff was a member of Goldman Sachs' LGBT Network, which includes approximately 5,000 members and allies, and participated in various LGBT+ activities supported by Goldman Sachs, including by participating as a junior employee in planning for the firm's LGBTQ Leadership conference, and avers that the Complaint's emphasis on Goldman Sachs' LGBT+ support networks contradicts the Complaint's false claim of discrimination.

37.      Denies the allegations of Paragraph 37 of the Complaint, except admits that the firm's LGBT Network has a steering committee and is divided into approximately a dozen "pillars," that in 2014 Plaintiff became head of the Analyst and Associate Engagement Pillar and

that the activities of those in that Pillar include coordinating events to welcome new employees

to the firm and to introduce them to members of the LGBT Network.

38.     Admits the allegations of Paragraph 38 of the Complaint.

39.     Denies the allegations of Paragraph 39 of the Complaint, except admits that

Plaintiff was co-head of the Consumer & Investment Division's LGBT Network, and avers that

the Human Capital Management Division assisted in the creation of the Division's LGBT

Network and supported a budget for the activities of the members of the Network prior to the

creation of the Network.

40.     Denies the allegations of Paragraph 40 of the Complaint, except admits that

activities of the Goldman Sachs-sponsored Divisional LGBT Network included assisting in

LGBT+ recruiting, working to identify ways in which partnering with LGBT+ clients could

provide commercial results and career development for LGBT+ members of the Division and

further admits that in 2016 Plaintiff and several other Goldman Sachs employees were invited by

the firm to attend the OutNEXT:  LGBT Emerging Leader Summit, and avers that Plaintiff's

emphasis on the accomplishments of Goldman Sachs' many vigorous LGBT+ initiatives

contradicts the Complaint's false claims of discrimination.

41.     Denies the allegations of Paragraph 41 of the Complaint, except admits that

Plaintiff was a participant in LGBT+ activities sponsored by Goldman Sachs, and avers that

Goldman Sachs supported him in that regard and that Plaintiff's emphasis on these facts

contradicts the Complaint's false claims of discrimination.

42.     Denies the allegations of Paragraph 42 of the Complaint, except lacks knowledge

or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph

42 of the Complaint concerning what Plaintiff may have thought, and avers that Goldman Sachs

strongly values, encourages and supports its LGBT+ employees and that Goldman Sachs has strong anti-discrimination policies and a professional Employee Relations staff dedicated to compliance with those policies.

43.     Lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 43 of the Complaint.

44.     Denies the allegations of Paragraph 44 of the Complaint, except lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that a colleague of Plaintiff told Plaintiff that the call moderator said that Plaintiff should not be included on a conference call because "he sounds too gay," and avers that Goldman Sachs was unable to confirm whether the alleged remark was made because Plaintiff declined to cooperate with Goldman Sachs' investigation into the matter.

45.     Denies the allegations of Paragraph 45 of the Complaint, except lacks knowledge or information sufficient to form a belief as to whether Plaintiff was "shocked and hurt" by the alleged remark discussed in Paragraph 44, admits that Plaintiff notified Ms. Skulpone of the alleged remark discussed in Paragraph 44 while she was out of the office on maternity leave, and avers that:  (a) Ms. Skulpone was upset by the report of the remark and asked Plaintiff how he preferred to proceed and offered to report the remark to Goldman Sachs' Employee Relations department on his behalf, (b) Plaintiff informed Ms. Skulpone that he did not want her to report the remark, (c) Ms. Skulpone told Plaintiff that he was able to report the remark to Employee Relations at any time, and (d) Plaintiff later notified Ms. Skulpone that he had spoken to the person who supposedly made the alleged remark, that the person denied making the remark, and that Plaintiff was satisfied.

46.     Denies the allegations of Paragraph 46 of the Complaint, except admits that, after returning from maternity leave, Ms. Skulpone informed Employee Relations and Ms. Schnoll of the alleged remark.

47.     Denies the allegations of Paragraph 47 of the Complaint, except admits that Leslie Reider from Employee Relations contacted Plaintiff about the alleged remark discussed in Paragraph 44 and that Plaintiff told Ms. Reider he did not want to take further action, and avers that Plaintiff declined to provide details regarding the alleged remark to Ms. Reider, refused to provide Ms. Reider with the names of either the person who told him of the alleged remark or the person who allegedly made the remark, and told Reider that:  he (a) was not "super bothered" by the matter, (b) believed Goldman Sachs is tolerant and inclusive, (c) believed the alleged remark was an isolated incident, and (d) did not want Employee Relations to take further action. Goldman Sachs further avers that Ms. Reider later wrote to Plaintiff, "I just wanted to see if you have given further thought to whether you would provide me with the name of the individual we discussed.  I know that you had advised me that you would not like the firm to take any further action and that you feel comfortable in your work environment.  Please let me know if anything has changed" and that Plaintiff responded to her email 13 minutes later, saying "I appreciate you reaching out.  In terms of my work environment and comfort level, nothing has changed.  Hope you had a great weekend!"  Goldman Sachs further avers that despite Plaintiff's refusal to cooperate by providing the names of the individuals who Plaintiff claims made the alleged remarks discussed in Paragraph 44, Ms. Reider acted independently to do what she could to investigate.

48.     Denies the allegations of Paragraph 48 of the Complaint, and avers that Goldman Sachs has strong anti-discrimination policies and a professional Employee Relations staff dedicated to ensuring compliance with those policies.

49.     Denies the allegations of Paragraph 49 of the Complaint, except admits that Plaintiff took the Monday after the June 2015 LGBT Pride parade off from work, avers that Plaintiff did not report that remark to Employee Relations or Firm management until May 2018, approximately three years later, and further avers that Schnoll was a strong supporter of the firm's employees' participation in the June 2015 LGBT+ Pride parade.

50.     Denies the allegations of Paragraph 50 of the Complaint, except lacks knowledge or information sufficient to form a belief as to the truth or falsity of what Plaintiff heard, and avers that there is no basis to attribute a discriminatory animus to the alleged remark.

51.     Denies the allegations of Paragraph 51 of the Complaint.

52.     Denies the allegations of Paragraph 52 of the Complaint.

53.     Denies the allegations of Paragraph 53 of the Complaint.

54.     Denies the allegations of Paragraph 54 of the Complaint.

55.     Denies the allegations of Paragraph 55 of the Complaint, except admits that Plaintiff did not report the alleged remark discussed in Paragraph 54 to Employee Relations or any other of the channels established by the firm for employees to raise concerns, and avers that Goldman Sachs has strict anti-retaliation policies in place and empowers Employee Relations to enforce them.

56.     Denies the allegations of Paragraph 56 of the Complaint, except admits that, on May 4, 2018, Ms. Schnoll remarked to Plaintiff that, in sum and substance, "You look so Miami today," and avers that Plaintiff had just returned from vacation and entered a meeting with a tan

and wearing an unbuttoned shirt, and that Ms. Schnoll apologized to Plaintiff after learning that

he took issue with the remark.

57.     Denies the allegations of Paragraph 57 of the Complaint, except admits that

Ms. Schnoll was involved in setting Plaintiff's compensation, and avers that Plaintiff's total

compensation was $160,000 in 2015, $160,000 in 2016, and $165,000 in 2017, and that Plaintiff

received a base salary of $122,000 in 2018.

58.     Denies the allegations of Paragraph 58 of the Complaint, except lacks knowledge

or information sufficient to form a belief as to the truth or falsity of the allegation of Paragraph

58 of the Complaint regarding Plaintiff's beliefs, and avers that Plaintiff's compensation

compared favorably to other junior Vice Presidents in the group and that Plaintiff never raised a

complaint about his compensation with Employee Relations or any other of the channels

established by the firm for employees to raise concerns.

59.     Denies the allegations of Paragraph 59 of the Complaint, except admits that in

May 2018 Jen Barbetta was a Participating Managing Director in Goldman Sachs' Global

Portfolio Solutions Group within the Consumer & Investment Management Division and that

Ms. Barbetta was a mentor of Plaintiff and active in the LGBT Network, that Plaintiff met with

Ms. Barbetta on May 18, 2018, and that during that meeting he discussed his work situation, and

avers that the fact that the LGBT Network provided access to senior mentors contradicts the

Complaint's false claim of discrimination.

60.     Denies the allegations of Paragraph 60 of the Complaint, except lacks knowledge

or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph

60 of the Complaint as to Ms. Barbetta's state of mind, admits that Ms. Barbetta was an LGBT

Network leader and advocate for diversity and inclusion, and avers that Ms. Barbetta suggested

that Mr. Littleton meet with his manager to discuss his concerns about his career and that he

meet with Employee Relations.

61.     Denies the allegations of Paragraph 61 of the Complaint, except admits that, on

May 25, 2018, Plaintiff met with Ms. Reider.

62.     Denies the allegations of Paragraph 62 of the Complaint, except admits that

Plaintiff mentioned to Ms. Reider the allegations described in Paragraphs 44, 49, 54, and 56 of

the Complaint, and avers that this was the first time that Plaintiff reported any concerns to

Employee Relations (other than the allegations from 2014 described in Paragraph 44 of the

Complaint, the investigation of which Plaintiff had refused to assist).  Goldman Sachs further

avers that during that meeting, Plaintiff told Ms. Reider that he had met with Ms. Schnoll and

asked her whether he should actively pursue other opportunities and that she said that he should

do so, telling him that she did not think he was engaged in the work of her group and should put

his heart into finding something else.

63.     Denies the allegations of Paragraph 63 of the Complaint, except admits that

Ms. Reider told Mr. Littleton that she would investigate and would get back in touch with him

and that she thereafter spoke with a number of people, including Ms. Schnoll and Ms. Skulpone.

64.     Denies the allegations of Paragraph 64 of the Complaint, except admits that, in

June 2018, Ms. Reider met with Plaintiff and discussed the matter at length, including the fact

that Ms. Schnoll and Ms. Skulpone denied making remarks regarding Plaintiff's sexual

orientation, and avers that Ms. Reider also told Plaintiff that Ms. Schnoll and Ms. Skulpone had

described that Plaintiff's focus and attention to detail were sub-par and that they had received

feedback from others, including senior management, that was critical of his job performance.

Goldman Sachs further avers that during the meeting Ms. Reider discussed with Plaintiff the fact

that, as Plaintiff had previously told her on the day before Plaintiff raised his concerns with

Ms. Reider, Plaintiff had asked Ms. Schnoll whether he should look for another position and she

advised him that he should do so.  Ms. Reider told Plaintiff she had spoken with Ms. Schnoll and

Ms. Skulpone to understand why they thought he should start looking and they responded,

among other things, that his focus and attention to detail was not good, he missed meetings and

was not paying attention, that there had been a history of his performance being inconsistent, and

that there was concern about his not being accepting of feedback.

       65.     Denies the allegations of Paragraph 65 of the Complaint, except admits that

Ms. Reider reviewed with Plaintiff in detail what she had learned and told him that she could not

agree with his assertion of a hostile work environment based on his sexual orientation and

ethnicity, and avers that she further said that if in the future anyone says or does something that

makes him uncomfortable he should let her know.

       66.     Denies the allegations of Paragraph 66 of the Complaint, except admits that on

May 24, 2018 – in response to a question by Plaintiff – Ms. Schnoll told Plaintiff that he should

look for job opportunities elsewhere given his lack of engagement in his current role, and avers

that Plaintiff previously had informed Ms. Schnoll that he would prefer to work in a different

area, that Ms. Schnoll reiterated the need for Plaintiff to find another role, that senior firm

personnel assisted him with a job search over the ensuing months, and that Ms. Schnoll told

Plaintiff in the summer of 2018 that if he did not find a new role within Goldman Sachs within

the subsequent months, his employment likely would be terminated.

       67.     Denies the allegations of Paragraph 67 of the Complaint, avers that Paragraph 67

purports to include partial quotations from Plaintiff's performance review document, refers to the

review document for a complete statement of its contents, and further avers that in 2018 Plaintiff ranked in the quartile 4, placing him in the bottom 25% of his peer group.

68.     Denies the allegations of Paragraph 68 of the Complaint, avers that Paragraph 68 purports to include partial quotations from Plaintiff's performance review document, refers to the review document for a complete statement of its contents, and further avers that the inclusion of positive comments by management regarding Plaintiff's leadership in the LGBT Network contradicts the Complaint's inaccurate assertion that management held his sexual orientation against him.

69.     Denies the allegations of Paragraph 69 of the Complaint, and avers that Plaintiff's performance reviews contained comments expressing concerns about Plaintiff's job performance, including concerns about his work ethic, and feedback reflecting areas for improvement.

70.     Denies the allegations of Paragraph 70 of the Complaint.

71.     Denies the allegations of Paragraph 71 of the Complaint.

72.     Avers that Paragraph 72 of the Complaint purports to include partial quotations from Plaintiff's performance review document and refers to the review document for a complete statement of its contents.

73.     Denies the allegations of Paragraph 73 of the Complaint.

74.     Denies the allegations of Paragraph 74 of the Complaint, and avers that Plaintiff was the subject of co-worker complaints about his behavior, including from a junior analyst who complained that he was abusive to her.

75.     Denies the allegations of Paragraph 75 of the Complaint, and avers that, during his review meeting, Ms. Schnoll and Ms. Skulpone informed Plaintiff that, although no final

decision had been reached regarding his employment status, if he did not identify another role within the firm by the end of January 2019, he would, in all likelihood, be asked to leave the firm, and further avers that Plaintiff was advised months earlier of the need to find another position and that Plaintiff was given many months to do so.  Goldman Sachs further avers that multiple Goldman Sachs personnel assisted Plaintiff's effort to find another position within the firm during 2018 and January 2019 and the fact that Plaintiff was actively seeking other roles within the firm contradicts the Complaint's inaccurate assertions of discrimination and criticism of the firm.

76.     Denies the allegations of Paragraph 76 of the Complaint, and avers that Paragraph 76 appears to be intentionally drafted to sidestep the indisputable fact that Plaintiff was told repeatedly by firm personnel in meetings of issues with his performance.

77.     Denies the allegations of Paragraph 77 of the Complaint, and avers that the registration change referred to was the result of a FINRA rule change, was a reference to termination of a registration status, not employment termination, and was done across the board for a number of employees and had nothing to do with Plaintiff individually.

78.     Denies the allegations of Paragraph 78 of the Complaint.

79.     Denies the allegations of Paragraph 79 of the Complaint, except admits that Mr. Chavez is the former Chief Financial Officer and current Global Co-Head of the Securities Division, that Mr. Chavez is openly gay, and that Mr. Chavez met with Plaintiff, at Plaintiff's request, after Plaintiff had been told if he did not find a new position within the firm his employment would be terminated.

80.     Denies the allegations of Paragraph 80 of the Complaint.

81.     Denies the allegations of Paragraph 81 of the Complaint, and avers that after Plaintiff described that he was bothered by the comment that he looked "Miami," Mr. Chavez asked what Plaintiff took from that and Plaintiff speculated that it had to do with his Latino origin, and that Mr. Chavez thereafter described to Plaintiff a comment made to him by a colleague after he had been appointed to the firm's Management Committee, to make the point that people can make comments that they do not mean to be offensive but that the recipient might take differently from the way intended.

82.     Denies the allegations of Paragraph 82 of the Complaint, and avers that Paragraph 82 purports to include a partial quotation from a New York Times article and refers to the article for a complete statement of its contents.

83.     Denies the allegations of Paragraph 83 of the Complaint, except admits that Paragraph 83 purports to include a partial quotation from an unknown source.

84.     Denies the allegations of Paragraph 84 of the Complaint, avers that Paragraph 84 purports to include a partial quotation from Goldman Sachs' press release announcing its 2018 partner class, and refers to the release for a complete statement of its contents.

85.     Denies the allegations of Paragraph 85 of the Complaint, avers that Paragraph 85 purports to include a partial reference from Goldman Sachs' press release announcing its 2018 Participating Managing Director class, and refers to the release for a complete statement of its contents.

86.     Denies the allegations of Paragraph 86 of the Complaint, avers that Paragraph 86 purports to include a partial quotation from Goldman Sachs' Affinity Network Survey 2018 and refers to that document for a complete statement of its contents, which among other things include compliments to the firm's Human Capital Management team for being "a critical partner

in ensuring the [LGBT] network's continued development and success" and an affirmation that the firm's diversity programs "have all been very effective in raising awareness about diversity."

87.     Denies the allegations of Paragraph 87 of the Complaint, avers that Paragraph 87 purports to include a partial quotation from a document titled "Second Annual Gender Pay Scorecard," refers to that document for a complete statement of its contents, and further avers that Paragraph 87 reflects a misleading reference to a document that has no reference to LGBT+ issues.

88.     Denies the allegations of Paragraph 88 of the Complaint, avers that Paragraph 88 purports to summarize a document titled "Second Annual Gender Pay Scorecard," and refers to that document for a complete statement of its contents.

89.     Denies the allegations of Paragraph 89 of the Complaint, avers that Paragraph 89 purports to include a summary of a portion of a document, refers to that document for a complete statement of its contents, and further avers that the "grades" in the document are not based on actual pay data from the companies referred to and do not purport to reflect pay.

90.     Denies the allegations of Paragraph 90 of the Complaint.

91.     Denies the allegations of Paragraph 91 of the Complaint, avers that Paragraph 91 purports to include a summary of a document that does not refer to Goldman Sachs, and refers to that document for a complete statement of its contents.

92.     Denies the allegations of Paragraph 92 of the Complaint, avers that Paragraph 92 of the Complaint purports to include a summary of a document that does not refer to Goldman Sachs, and refers to that document for a complete statement of its contents.

93.     Denies the allegations of Paragraph 93 of the Complaint.

## FIRST CAUSE OF ACTION

94.     Restates and reincorporates herein its responses to Paragraphs 1 through 93 of the Complaint as if fully set forth herein.

95.     Denies the allegations of Paragraph 95 of the Complaint.

96.     Denies the allegations of Paragraph 96 of the Complaint.

97.     Denies the allegations of Paragraph 97 of the Complaint.

## SECOND CAUSE OF ACTION

98.     Restates and reincorporates herein its responses to Paragraphs 1 through 97 of the Complaint as if fully set forth herein.

99.     Denies the allegations of Paragraph 99 of the Complaint.

100.    Denies the allegations of Paragraph 100 of the Complaint.

101.    Denies the allegations of Paragraph 101 of the Complaint.

## THIRD CAUSE OF ACTION

102.    Restates and reincorporates herein its responses to Paragraphs 1 through 101 of the Complaint as if fully set forth herein.

103.    Denies the allegations of Paragraph 103 of the Complaint.

104.    Denies the allegations of Paragraph 104 of the Complaint.

105.    Denies the allegations of Paragraph 105 of the Complaint.

## FOURTH CAUSE OF ACTION

106.    Restates and reincorporates herein its responses to Paragraphs 1 through 105 of the Complaint as if fully set forth herein.

107.    Denies the allegations of Paragraph 107 of the Complaint.

108.    Denies the allegations of Paragraph 108 of the Complaint.

109.    Denies the allegations of Paragraph 109 of the Complaint.

## FIFTH CAUSE OF ACTION

110.    Restates and reincorporates herein its responses to Paragraphs 1 through 109 of the Complaint as if fully set forth herein.

111.    Denies the allegations of Paragraph 111 of the Complaint, and states that Paragraph 111 contains allegations that are not directed against Goldman Sachs and thus no response is required.

112.    Denies the allegations of Paragraph 112 of the Complaint, and states that Paragraph 112 contains allegations that are not directed against Goldman Sachs and thus no response is required.

113.    Denies the allegations of Paragraph 113 of the Complaint, and states that Paragraph 113 contains allegations that are not directed against Goldman Sachs and thus no response is required.

## SIXTH CAUSE OF ACTION

114.    Restates and reincorporates herein its responses to Paragraphs 1 through 113 of the Complaint as if fully set forth herein.

115.    Denies the allegations of Paragraph 115 of the Complaint.

116.    Denies the allegations of Paragraph 116 of the Complaint.

117.    Denies the allegations of Paragraph 117 of the Complaint.

118.    Denies the allegations of Paragraph 118 of the Complaint.

## SEVENTH CAUSE OF ACTION

119.    Restates and reincorporates herein her responses to Paragraphs 1 through 118 of the Complaint as if fully set forth herein.

120.    Denies the allegations of Paragraph 120 of the Complaint.

121.    Denies the allegations of Paragraph 121 of the Complaint.

122.    Denies the allegations of Paragraph 122 of the Complaint.

123.    Denies the allegations of Paragraph 123 of the Complaint.

### EIGHTH CAUSE OF ACTION

124.    Restates and reincorporates herein her responses to Paragraphs 1 through 123 of the Complaint as if fully set forth herein.

125.    Denies the allegations of Paragraph 125 of the Complaint, and states that Paragraph 125 contains allegations that are not directed against Goldman Sachs and thus no response is required.

126.    Denies the allegations of Paragraph 126 of the Complaint, and states that Paragraph 126 contains allegations that are not directed against Goldman Sachs and thus no response is required.

127.    Denies the allegations of Paragraph 127 of the Complaint, and states that Paragraph 127 contains allegations that are not directed against Goldman Sachs and thus no response is required.

128.    Denies the allegations of Paragraph 128 of the Complaint, and states that Paragraph 128 contains allegations that are not directed against Goldman Sachs and thus no response is required.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The decisions made with respect to Plaintiff's employment were made for legitimate, non-discriminatory, non-retaliatory business reasons.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff has not sustained any cognizable injury by reason of any actions of Goldman Sachs.

## FOURTH AFFIRMATIVE DEFENSE

At all times relevant herein, including prior to the alleged discriminatory acts referred to in the Complaint, Goldman Sachs has established and complied with policies, programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, agents, and persons employed as independent contractors. Plaintiff unreasonably failed to take advantage of the preventive and/or corrective opportunities provided by Goldman Sachs or to avoid harm otherwise.  Further, Goldman Sachs has responded appropriately to any allegations of discrimination and/or retaliation.

## FIFTH AFFIRMATIVE DEFENSE

On information and belief, if Plaintiff has suffered damages, he has failed to mitigate them.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover punitive damages in this action because, at all relevant times, including prior to the allegations that form the basis of Plaintiff's claims, Goldman Sachs engaged in good faith efforts to comply with the relevant statutes.  Plaintiff's claims to recover punitive damages are further barred because Goldman Sachs' alleged conduct did not rise to the required level of culpability to justify an award of such damages.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to recover for injuries, physical and/or emotional, allegedly incurred in the course of or arising out of employment with Goldman Sachs,

such recovery is barred by the exclusivity of remedies under New York Workers' Compensation law.

## EIGHTH AFFIRMATIVE DEFENSE

The Goldman Sachs Group, Inc. was not Plaintiff's employer and therefore was improperly named as a defendant in this action.

## NINTH AFFIRMATIVE DEFENSE

Goldman Sachs specifically gives notice that it intends to rely upon such other defenses as may become available by law, pursuant to statute, or during discovery proceedings, and hereby reserves the right to amend its Answer and assert such defenses.

*/s/ Theodore O. Rogers, Jr.*
Theodore O. Rogers, Jr.
Matthew J. Porpora
Jacob G. Singer
Arturo C. Schultz

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendant*
*The Goldman Sachs Group, Inc.*

February 26, 2020